SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

June 7, 2017

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5256

Paul G. Enterline, Esquire
113 S. Race Street
P.O. Box 826
Georgetown, DE 19947

David C. Hutt, Esquire
R. Eric Hacker, Esquire
Morris James Wilson Halbrook
& Bayard LLP
107 W. Market Street
P.O. Box 690
Georgetown, DE 19947

Jamie P. Sharp, Esquire
Moore & Rutt, P.A.
122 West Market Street
P.O. Box 554
Georgetown, DE 19947

> **RE:** ***John Forrey, et. al., v. Sussex County Board of Adjustment and Canal Corkran, LLC, and Jungle Jim's Inc., d/b/a Jungle Jim's Amusement Park***
> **C.A. No.: 16A-04-002-ESB**

Dear Counsel:

This is my decision on the appeal filed by Appellants John Forrey, et. al., of the Sussex County Board of Adjustment's decision granting an 18-foot height variance for a 60-foot high water slide to be constructed at Jungle Jim's Amusement Park. Jungle Jim's is a fifteen-acre amusement park complex located at 36944 Country Club Road, Rehoboth Beach, Delaware. Jungle Jim's applied to the Board of Adjustment for an 18-foot variance from the 42-foot height limit in order to add a new 60-foot high water slide. The proposed water slide has two platforms and five

water tubes. The lower platform has three water tubes. The lower platform and its canopy appear to be well below the 42-foot height limit. The taller platform has two water tubes. The taller platform is at 47 feet and its canopy is at 60 feet. The Appellants are neighboring homeowners to Jungle Jim's Amusement Park. The Appellants are opposed to the variance because they claim Jungle Jim's property is not unique, that it can be developed without a variance, that the proposed water slide will alter the character of the neighborhood, and that the height of the proposed water slide will reduce the privacy of their backyards. After a hearing on the application, the Board approved Jungle Jim's application for a variance. The Appellants now appeal the Board's decision to this Court.

## The Board Hearing

The Board held a public hearing on Jungle Jim's application on February 15, 2016. Present at the hearing for Jungle Jim's were David C. Hutt, Esquire, William D. Lingo ("Bill"), T. William Lingo, and John Barwick. The Board received two letters in support of Jungle Jim's application and one letter in opposition to it.

Hutt presented Jungle Jim's application to the Board. Hutt told the Board that Jungle Jim's sought to add a new water slide to the amusement park in the area where a go-cart track was located. Specifically, Hutt told the Board that Jungle Jim's sought an 18-foot variance from the 42-foot height restriction in Section 115-82C of the

2

Sussex County Code.

Hutt detailed the history of Jungle Jim's Amusement Park, starting with its origin in 1974. Hutt told the Board that Jungle Jim's is a 15-acre parcel of land that is zoned C-1. Due to a change in the Sussex County Code in 1992, an amusement park was no longer a permitted use and instead became a conditional use. Hutt informed the Board that the current owners purchased the property in 1998.

In 2002, Jungle Jim's, through the purview of the Planning and Zoning Commission, added two water slides to the park, the Anaconda and the Stampede. Including their canopies, the Anaconda and the Stampede have a height of approximately 60 feet. In 2008, Hutt told the Board that Jungle Jim's added a spray area to the park through a commercial site plan review by the Planning and Zoning Commission. Hutt stated that Jungle Jim's is once again looking at keeping the park modern and attractive to its guests.

Hutt told the Board that the most complained-about feature of Jungle Jim's are the go-cart tracks due to the noise and their hours of operation. Since 2011, Jungle Jim's began eliminating the go-cart tracks to help alleviate some of the noise for the neighbors. Hutt told the Board that Jungle Jim's sought to replace the final go-cart track with a water slide.

After discussions with the water slide manufacturing company, Hutt told the

3

Board that it was determined that the minimum height at which the proposed water slide could function and safely transport a rider from the top to the bottom of the slide would be 47 feet. In addition to the height of the water slide, the platform would also require a 13-foot canopy. Hutt also told the Board that the distance from the property line to the back of the slide was approximately 80 feet and then another 40 feet or so from the property line to the back of the nearest neighbor's house. Hutt stated that it would not be feasible to relocate the proposed water slide to another area of the park.

During the hearing Hutt addressed the standards for granting a variance. Hutt stated that (1) the property is unique because it is a pre-existing, non-conforming use as an amusement park and that because of the topography of the property no portion of the water slide can be placed below grade, (2) the property can not be otherwise developed and the variance is necessary to enable the reasonable use of the property, (3) Jungle Jim's did not create the need for the variance, (4) the addition of a water slide will not alter the essential character of the neighborhood, and (5) the variance sought is the minimum necessary that will afford relief.

T. William Lingo testified that he is a principle in Jungle Jim's Amusement Park and a certified general real property appraiser. Mr. Lingo stated that he also has been an expert witness in Chancery Court and Family Court. Mr. Lingo testified that

4

when the park was developed in 1973 it was surrounded by undeveloped property. Based upon this, Mr. Lingo testified that when the properties surrounding the park were developed, any negative impact the park would have had on those properties would have taken place at the time of development. Mr. Lingo also testified that he would be willing to plant a row of trees along the rear of the property to help reduce the sound coming from the park.

John Barwick testified on behalf of Jungle Jim's. Mr. Barwick is a consulting engineer with Karins and Associates. Mr. Barwick testified that based upon the height of the proposed platform and the sight lines into the neighboring yards, it would be impossible to see through or into an outside shower enclosure. Mr. Barwick also testified that, as it was explained to him, the proposed height of the platform was necessary in order to make the slide into a thrill ride.

Bill Lingo testified on behalf of Jungle Jim's. Bill Lingo is the general manager and runs the day-to-day operations of the amusement park. Bill Lingo testified that the proposed water slide would not create any more noise than what currently exists. Bill Lingo also testified that the removal of the go-cart tracks has done away with the noise complaints from the neighbors.

Esther Downs and Bruce Powell spoke in opposition to Jungle Jim's application. Esther Downs testified that she lives in a house which borders the

southern end of Jungle Jim's property. Mrs. Downs testified that the proposed slide serves no altruistic benefit to the community and will negatively impact the neighboring residents for years to come. Mrs. Downs testified to her concerns about the proposed water slide in relation to a nearby storm water drainage pond. Mrs. Downs also testified to her belief that the quality of life to the neighboring residents will be detrimentally impacted due to noise and privacy concerns.

Bruce Powell testified that he believes the placement of the proposed water slide would be in the worst possible location with respect to noise and the neighboring properties. Mr. Powell testified that when he purchased his home he believed the amusement park would ultimately fail and be replaced by housing developments. Mr. Powell also voiced his concerns about the storm water management and his belief that the proposed water slide would negatively affect his home's value.

At the conclusion of the hearing the Board voted to table Jungle Jim's application until its next regular meeting. The Board revisited Jungle Jim's application at its meeting on February 29, 2016, during which time the Board members discussed the factors necessary for granting a variance and how they related to Jungle Jim's application. In a 3 to 2 vote, the Board granted Jungle Jim's application for a variance. The Board issued its written decision on April 5, 2016.

6

# STANDARD OF REVIEW

The standard of review on appeals from the Board of Adjustment is limited to the correction of errors of law and a determination of whether substantial evidence exists in the record to support the Board's findings of fact and conclusions of law.[1] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[2] If the Board's decision is supported by substantial evidence, a reviewing court must sustain the Board's decision even if such court would have decided the case differently if it had come before it in the first instance.[3] "The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable."[4] "If the Board's decision is fairly debatable, there is no abuse of discretion."[5] "In this process, '[t]he Court will consider the record in the light most favorable to the

---

[1] *Janaman v. New Castle County Board of Adjustment*, 364 A.2d 1241, 1242 (Del. Super. 1976).

[2] *Miller v. Board of Adjustment of Dewey Beach*, 1994 WL 89022, *2 (Del. Super. Feb. 16, 1994).

[3] *Mellow v. Board of Adjustment of New Castle County*, 565 A.2d 947, 954 (Del. Super. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).

[4] *Mellow*, 565 A.2d at 956.

[5] *Id.*

prevailing party below.'"[6] In the absence of substantial evidence, the Superior Court may not remand the Board's decision for further proceedings, but rather, may only "reverse or affirm, wholly or partly, or may modify the decision brought up for review."[7]

## DISCUSSION

The Appellants argue that the Board failed to correctly evaluate and apply the statutory requirements for granting a height variance to Jungle Jim's. The Board gets it power from 9 *Del.C.* §6917. This section authorizes the Board to hear and grant variance requests.[8] The Sussex County Council enacted §115-211 of the Sussex County Code to implement 9 *Del.C.* §6917.

Section 115-211(B) of the Sussex County Code provides that the Board shall grant a variance only if five certain findings are made:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that

---

[6] *Holowka v. New Castle County Board of Adjustment*, 2003 WL 21001026, at *4 (Del. Super. April 15, 2003) citing *General Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991).

[7] 22 *Del. C.* § 328(c).

[8] 9 *Del.C.* §6917(1).

8

the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of the Zoning Ordinance or code in the neighborhood or district in which the property is located.

(2) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance or code and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located and not substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

I will review the five elements of Section 115-211(B) as they pertain to Jungle Jim's application to see if the Board's decision is supported by substantial evidence in the record and in accordance with the applicable law.

## A. Unique Physical Circumstances

The first element of Section 115-211(B) which Jungle Jim's must satisfy for the granting of a variance is Section 115-211(B)(1), which states "that there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of the Zoning Ordinance or code in the neighborhood or district in which the property is located."

The Board found that the property was unique because it had been used as an amusement park with water slides since 1974. This use, according to the Board, is now a non-conforming use under the current Sussex County Code. This use, also according to the Board, predated changes in the Sussex County Code and involves structures which are higher than ordinary structures. The Board also found that the property's topography prevents Jungle Jim's from building a portion of the proposed water slide below grade. The Board also found that the property's history and physical limitations are unique and created an exceptional practical difficulty for Jungle Jim's.

In its application, Jungle Jim's stated that the maintenance and modernization

10

of a pre-existing, non-conforming amusement park presents an exceptional practical difficulty. Jungle Jim's witnesses testified that the proposed water slide must have a minimum height of 47 feet for safety. Jungle Jim's witnesses also testified that the topography would not lend itself to placing a portion of the water slide below grade, thus making it impossible to reduce or eliminate the need for a height variance. Jungle Jim's argues that prior holdings of this Court have repeatedly determined that a variance application is intrinsically related to the property when the application seeks relief from a zoning restriction which prevents a landowner from undertaking a permitted use of a suitable piece of land.[9] Jungle Jim's argues that this principal applies to it because it is the height restriction which prevents it from building a new water slide that conforms to the property's existing structures and traditional use.

The Appellants argue that the Board erred in granting the height variance because there is nothing in the record to show that the unique physical attributes of the property in question present any exceptional hardship or difficulty to Jungle Jim's. The Appellants argue that the property is a large, wide, flat, fifteen acre parcel of land, which already accommodates a number amusement activities and rides.

The Appellants are correct. The fact that the amusement park is now a non-

---

[9] *Liarakos v. New Castle County Board of Adjustment*, 1998 WL 437135, at *2 (Del. Super. July 23, 1998); *Dexter v. New Castle County Board of Adjustment*, 1996 WL 658861, at *5 (Del. Super. Sept. 17, 1996), *aff'd*, 692 A.2d 414 (Del. 1997) (Table).

11

conforming use has nothing to do whatsoever with the physical circumstances or conditions of the property, which are the appropriate criteria under Section 115-211(B)(1). Nothing in the record establishes that Jungle Jim's property is irregular, narrow or shallow of lot size or shape. It is not hilly. It is not narrow. It does not have a unique shape to it. It is a flat parcel of land. Moreover, §115-211(B)(1) explicitly states that the unnecessary hardship must be due to such conditions and not to "circumstances or conditions generally created by the provisions of the Zoning Ordinance or code in the neighborhood or district in which the property is located." The Board's finding completely ignored this and is contrary to §115-211(B)(1). There is quite simply nothing unique about Jungle Jim's property.

The Appellants also argue that the Board erred when it found that the topography of the site prevented Jungle Jim's from placing some portion of the water slide below grade. This finding is not supported by substantial evidence in the record. There is nothing more in the record than a statement by Mr. Hutt that this was so.[10] Mr. Hutt said:

> In this area of Sussex County and that site in particular, there's not a means of the slide going underground in any way, and so thus this site does not lend itself to reducing – shrinking the slide somehow underground; the topography would not lend itself to accomplishing a 47-foot high slide in that means.

---

[10] Mr. Hutt's comments were seconded by one of the Lingos.

12

Mr. Hutt is an attorney. The feasability of placing a portion of the slide below grade would seem to be the purview of a structural engineer and/or a soil scientist. Mr. Hutt's statement is simply not the type of statement that a reasonable mind would accept as adequate to support the conclusion that the Board reached. Moreover, §115-211(B)(1) requires the exceptional topographical conditions be particular to the property in question. Mr. Hutt referred to the topographical conditions as both affecting "this area of Sussex County and that site in particular." Mr. Hutt's statement, at least to some extent, makes the allegedly exceptional topographical conditions affecting Jungle Jim's property as also affecting this area of Sussex County as well, which runs afoul of §115-211(B)(1). Moreover, while Mr. Hutt mentioned that the exceptional topographical conditions were particular to Jungle Jim's property, he never said why that was so. Mr. Hutt's statement is wholly conclusory. In any event, I find this whole argument rather unusual. There is nothing in the record to indicate that Jungle Jim's ever considered placing a portion of the water slide below grade so that it would not need a variance. To argue that you should get a variance for not being able to do something you never even considered doing is rather unpersuasive.

The Board's finding that Jungle Jim's satisfied Section 115-211(B)(1) is not

in accordance with the applicable law and is not supported by substantial evidence in the record.

**B. No Possibility of Development**

The second element of Section 115-211(B) which Jungle Jim's must satisfy for the granting of a variance is Section 115-211(B)(2), which states that "because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance or code and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

The Board found that due to the "uniqueness of the lot and the situation," the property cannot be developed in strict conformity with the Sussex County Zoning Code. The Board noted that the property has been used as an amusement park for 40 years. The Board further noted that Jungle Jim's removed the go-cart track and wants to replace it with a water slide like the other two water slides already on the property. The Board found that because water slides are the main attraction at Jungle Jim's, constructing new slides in a manner consistent with the other slides is necessary for Jungle Jim's to reasonably use the property.

On its application, Jungle Jim's stated that "because the park is a pre-existing and non-conforming use, there is no ability to install, upgrade and/or update rides in

14

the park in strict conformity with the Sussex County Code. Granting the variance for a ride at the same height as existing rides in the water park will enable the reasonable use of the property." During the hearing Jungle Jim's witnesses testified that the minimum height needed to make this proposed ride safe is 47 feet.

The Appellants note that Jungle Jim's is currently being used as an amusement park, just like it has been for decades. The Appellants also note that the park accommodates, and has accommodated in the past, a wide variety of amusements from golf to go-carts, and can continue to do so in the future.

I have concluded that the Board's finding that Jungle Jim's needs a third large water slide in order to be able to reasonably use its property is not based upon substantial evidence. Frankly, the Board's decision is not based upon any evidence at all. Mr. Hutt told the Board that Jungle Jim's needs the proposed water slide, and the requested variance, to be able to reasonably use the property as it has been used since 1974. This is just a conclusory statement. "If the property in question can be reasonably utilized, or is being reasonably utilized, without the existence of the non-conforming structure sought, the applicant cannot establish the necessity of the variance. Reasonable use may exist even if it is not the applicant's preferred use."[11]

---

[11] *The Village of Highway One v. Board of Adjustment of Sussex County*, 2015 WL 799536, at *5 (Del. Super. Feb. 23, 2015).

15

Jungle Jim's property, as a whole, is certainly being reasonably used because a very successful amusement park is being operated on it. The part of the property in question was previously used for go-carts. Jungle Jim's decided to shut down its go-cart ride. Jungle Jim's could have continued to operate or upgrade its go-cart tracks. Instead, Jungle Jim's wants to install a new water slide. The proposed water slide has two platforms that "discharge" riders into water flowing through tubes. One of the platforms, including its canopy, is well below the 42-foot height limit. Jungle Jim's could have built this part of the water slide in question without a variance. There is nothing in the record that supports a conclusion that building a smaller water slide in accordance with the zoning code would not, for some reason, be a reasonable use of Jungle Jim's property. The Board's finding that Jungle Jim's satisfied Section 115-211(B)(2) is not supported by substantial evidence in the record.

## C. Unnecessary Hardship or Exceptional Practical Difficulty

The third element of Section 115-211(B) which Jungle Jim's must satisfy for the granting of a variance is Section 115-211(B)(3), which states "that such unnecessary hardship has not been created by the appellant."

The Board held that the exceptional practical difficulty was not created by Jungle Jim's. The Board found the water park to be a pre-existing and non-conforming use and that there is no language in the Sussex County Code authorizing

16

any changes to rides located in these areas. The Board also found that the ability to replace rides within the park is limited by the water slide manufacturer's requirement that the slide be no less than 47 feet tall.

On its application Jungle Jim's states that it did not create the water park and the water park is a pre-existing and non-conforming use. Jungle Jim's also notes that the Sussex County Code does not allow an amusement park owner to regularly modernize the rides in a park without a variance. Jungle Jim's argues that the variance is related to the property's characteristics, including its historical use and topography. Therefore, Jungle Jim's argues that it did not create the hardship it now faces.

The Appellants argue that the Board should have denied the variance because the record shows the difficulty for Jungle Jim's is caused solely by its subjective desire to acquire this particular water slide.

"When the difficulty results from the applicant's preferred use of the land, and not the particular features of the property, the hardship the applicant suffers is self-created."[12] While the property may require an upgrade to allow the property's use to continue, it does not necessarily have to be this particular water slide. Even though the Board determined that the ability to replace rides within the park is limited by the

---

[12] *The Village of Highway One*, 2015 WL 799536, at *6.

17

water slide manufacturer requirements that the slides be no less than 47 feet tall, that is only for this particular water slide, as evidenced by the architect's plans in the record. The portion of the proposed water slide with the lower platform and three water tubes can certainly be built within the 42-foot height limit. Jungle Jim's can also continue to operate that area in question as a go-cart track or with a different water slide that can be accommodated within the 42-foot height restriction. Jungle Jim's created the hardship it now faces by proposing to build a water slide higher than the 42-foot limit. The Board's finding that Jungle Jim's satisfied Section 115-211(B)(3) is not supported by substantial evidence in the record.

## D. Character of Neighborhood

The fourth element of Section 115-211(B) which Jungle Jim's must satisfy for the granting of a variance is Section 115-211(B)(4), which states "that the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located and not substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare."

The Board determined that the essential character of the neighborhood would not be altered if it granted Jungle Jim's requested variance. The Board found that the property had been used as an amusement park for over 40 years and the proposed

18

water slide would be no taller than the two 60-foot water slides that are on the property. The Board also noted that Jungle Jim's is a seasonal business. The Board found the Appellants' arguments on property values, noise, and views unconvincing.

Jungle Jim's witnesses testified that the character of the neighborhood would not be altered with the addition of another water slide to the water park. The height of the proposed slide is almost identical to the slides the park currently operates. Jungle Jim's suggested that the character of the neighborhood would be improved with the removal of the go-carts because it would reduce the primary source of complaints from the neighbors. In its brief, Jungle Jim's cites to the testimony of Mr. Barwick, who stated as a matter of physics, the slide would not allow park patrons to see into the neighbors' outdoor showers.

The Appellants argue that the Board erred when it determined that the placement of the water slide would not change the character of the neighborhood. The Appellants argue that installing the new water slide would be comparable to installing a 47-foot high public observation platform overlooking their backyards which would reduce their privacy. The Appellants argue that people on the platform would be able to see into their outdoor showers. The Appellants also argue that the testimony of Jungle Jim's principle on property valuation should not be given substantial weight because of his self-interest in the matter.

19

Jungle Jim's is a part of the character of the neighborhood. It has been a part of the neighborhood for over 40 years. Water slides are a featured amusement of the park. Indeed, Jungle Jim's already has two 60-foot water slides. Adding another water slide to the park would not change anything. Jungle Jim's presented testimony from an appraiser that opined that the proposed water slides would have no adverse impact on property values. The Appellants did not present any information which contradicted the Board's finding on property values. The Board's finding that Jungle Jim's satisfied Section 115-211(B)(4) is based upon substantial evidence and free from legal error.

**E. Minimum Variance Needed**

The fifth element of Section 115-211(B) which Jungle Jim's must satisfy for the granting of a variance is Section 115-211(B)(5), which states "that the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue."

The Board found that the variance sought was the minimum necessary for the slide to be safely used while still meeting the goals of the amusement park.

Jungle Jim's witness testified at the Board Hearing that the variance is the minimum necessary in order for a rider to be safely conveyed down the slide. In support of its argument, Jungle Jim's presented the testimony of Mr. Barwick, who

20

reiterated that the height was necessary for safety reasons.

The Appellants argue that there is a lack of evidence that a variance is needed at all. In support of their argument, the Appellants cite to the record where Jungle Jim's conceded that if the variance is rejected, they would look at other uses for the property.

The Board's decision that the variance was the minimum necessary to grant relief is not based upon substantial evidence or free from legal error. The evidence in the record indicates that Jungle Jim's was using the property for go-carts. Jungle Jim's now seeks to build a new water slide in place of the go-carts. There is nothing in the record that indicates that Jungle Jim's cannot continue to use the property in the same manner as it did before. The record reflects Jungle Jim's desire to build a specific water slide that needs to be 47 feet tall for safety reasons. The record indicates that this new water slide actually consists of two platforms and that the lower platform appears to fit under the 42-foot height restriction. This demonstrates that the 18-foot variance Jungle Jim's desires is not the minimum necessary to afford relief. The Board's finding that Jungle Jim's satisfied Section 115-211(B)(5) is not supported by substantial evidence in the record.

## CONCLUSION

The record lacks substantial evidence to support the Board's granting of the

21

variance for Jungle Jim's Amusement Park. Jungle Jim's did not satisfy each and every element of Section 115-211(B). By failing to satisfy each and every element of Section 115-211(B), Jungle Jim's cannot demonstrate that a variance is necessary to enable it to reasonably use its property.

The decision of the Sussex County Board of Adjustment is **REVERSED**.

**IT IS SO ORDERED**.

Very truly yours,

E. Scott Bradley

ESB/sal
cc:    Prothonotary